# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CANDICE ROSS, et al.,**

      **Plaintiffs,**                             **Case No. 2:10-cv-1098**
                                                    **JUDGE GREGORY L. FROST**
      **v.**                                            **Magistrate Judge Norah McCann King**

**CHOICE HOTELS**
**INTERNATIONAL, INC., et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of a motion for summary judgment (ECF No. 61) filed by Defendant Choice Hotels International, Inc. ("Choice Hotels"), a memorandum in opposition (ECF No. 66) filed by Plaintiffs Candice Ross and Tiffany Gray, a reply memorandum (ECF No. 74) filed by Choice Hotels, a surreply memorandum (ECF No. 77) filed by Plaintiffs, and a surreply memorandum (ECF No. 80) filed by Choice Hotels. For the reasons that follow, this Court finds the motion not well taken.

### I. Background

On March 6, 2012, Plaintiffs Candice Ross and Tiffany Gray went to the Comfort Suites East Hotel in Columbus, Ohio. Plaintiffs sought to rent a room for the night that would serve as a gathering place for friends and family and then as lodging for Shaun Ross-Mitchell, Ross' brother who was celebrating his birthday that night. They spoke with a hotel front desk employee, Paul Van Doorn, who rented them in a room in Ross' name. Ross charged the room on her credit card, and Gray then paid Ross one-half of the room rental in cash.

When Ross, Gray, Ross-Mitchell, and three other individuals attempted to use the room

that evening, however, Van Doorn told them that the hotel had a "no party" policy and that there was a limit of five people per room. If they would not abide by these rules, Van Doorn explained, they would have to leave. Van Doorn then allegedly refused to give Ross a requested refund and a receipt and instead called the police. After the police arrived, Van Doorn purportedly admitted that the hotel did not have a "no party" policy. He denied that his treatment of Ross and her companions. Eventually the police left, and Ross and her companions departed the hotel after unsuccessfully obtaining the room or a refund.

Plaintiffs subsequently filed the instant action against Choice Hotels, GNA Properties, LLC, and Shree Nathaji Hospitality, Inc. Choice Hotels is the Comfort Suites East franchisor, GNA Properties, LLC ("GNA") is the franchisee, and Shree Nathaji Hospitality, Inc. ("Shree") is the company that manages Comfort Suites East. In their First Amended Complaint, Plaintiffs assert a claim for unlawful discrimination in violation of 42 U.S.C. § 1981, as well as state law claims for unlawful public accommodation discrimination in violation of Ohio Revised Code § 4112.02(G) and breach of contract. Choice Hotels has filed a motion for summary judgment on all three claims. The parties have completed briefing on the motion, which is ripe for disposition.

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence

of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Analysis

Plaintiffs' first claim is for discrimination in violation of 42 U.S.C. § 1981.  Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  The statute also states that "[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of

3

contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1981 extends both to public and private actors. 42 U.S.C. § 1981(c).

In the context of a commercial establishment case such as that found here, the Sixth Circuit has held that a plaintiff must show

> (1) plaintiff is a member of a protected class;
>
> (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and
>
> (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001).

This analytic framework also informs Plaintiffs' second claim. Plaintiffs assert a state law discrimination claim under Ohio Revised Code § 4112.02(G), which provides that "[i]t shall be an unlawful discriminatory practice"

> [f]or any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

Ohio Rev. Code § 4112.02(G). The parties agree that this Court must evaluate the § 4112.02(G) claim under the same standard as its counterpart federal claim. *See Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428, 434 (6th Cir. 2004) (applying Title VII analysis to § 4112.02(G) claim);

*Christian*, 252 F.3d at 880 ("[Plaintiff's] state law claim rises and falls with her federal claim because we evaluate Ohio state law discrimination claims generally under the same standard as federal discrimination claims."). Accordingly, Plaintiffs' two discrimination claims survive or fail together. *See Scott v. Thomas & King, Inc.*, No. 3:09-CV-147, 2010 WL 2630166, at *6 (S.D. Ohio June 28, 2010) ("[W]here the same facts and circumstances are used to support both a § 1981 claim and a Chapter 4112 claim, the result on summary judgment should be the same.").

Choice Hotels first argues that it is entitled to summary judgment on the foregoing discrimination claims because it does not operate hotels and does not rent or offer to rent public accommodations to anyone. In support of its argument, Choice Hotels asserts that it is not in the business of renting rooms, that it neither employed nor was able to exercise control over Comfort Suites East employees, and that it did not set or consult on the setting of hotel policies. These contentions target Plaintiffs' ability to satisfy the second prong of the requisite inquiry, specifically the requirement that Plaintiffs must show that they sought to make or enforce a contract for services ordinarily provided by Choice Hotels.

Evidence submitted with the summary judgment motion supports Choice Hotels' contentions. In an affidavit, Choice Hotels' Senior Counsel Stuart Kreindler states:

> 3. Under the express language of the Franchise Agreement, Franchisees were to operate the Hotel and had the sole responsibility for exercising ordinary business control over the Hotel, including personnel matters of the Hotel's employees, pricing of rooms and other services at the Hotel;
>
> 4. Under the express terms of the Franchise Agreement, Franchisees were independent contractors;
>
> 5. Choice does not operate or participate in the operation of hotels and has no responsibility for, or authority over, has never had any responsibility for, or

5

authority over, and has never operated or participated in, the operation of the Hotel;

6. Choice does not rent and does not offer to rent hotel rooms to the public and has never rented, or offered to rent, rooms at the Hotel to the public or to Plaintiffs;

7. Choice has no employees or agents working at or for Franchisees, GNA, Shree or the Hotel and has never had any employees or agents who worked at or for Franchisees, GNA, Shree or the Hotel;

8. Choice did not offer to enter into any contract, did not enter into any contract, did not refuse to offer to enter into any contract, and did not refuse to enter into any contract, with Plaintiffs;

9. Prior to March 19, 2010, Choice has never had any contact or communication with Plaintiffs;

10. Choice did not employ, and has never employed, Paul Van Doorn;

11. Choice has never had any contact or communication with Paul Van Doorn;

12. Choice did not authorize, and has never authorized, Franchisees, GNA, Shree or Paul Van Doorn to act for or on behalf of Choice;

13. Franchisees, GNA and Shree do not consult with Choice and Choice does not consult with or give any approval, disapproval or input to Franchisees, GNA or Shree in regard to who Shree can or cannot hire or decides to hire, discipline, promote, retain or fire;

14. Choice does not consult with or give any advice or input to Franchisees, GNA or Shree in regard to how Shree employees are treated, how many hours Shree employees are assigned to work, the shift assignments of any Shree employees, or the pay or benefits to be given to such employees;

15. Franchisees, GNA and Shree do not seek any advice from, and does not consult with, Choice and Choice does not give, or consult with, Franchisees, GNA

6

or Shree on whether to register or not register a guest at the Hotel;

16. Choice does not make any decisions, and does not participate in any decisions, by Franchisees, GAN or Shree regarding whether to rent or not rent a room at the Hotel to a potential guest;

17. Choice does not establish or set any policies for Franchisees, GNA or Shree or for the Hotel regarding the operation of the Hotel;

18. Choice does not, and never has, set the room rates for the Hotel;

19. Choice did not establish, and did not give input or participate in the establishment of, the "no party" policy established and employed by Franchisees, GNA and Shree at the Hotel; and

20. Choice did not establish, and did not give input or participate in the establishment of any per person per room limits policy established and employed by Franchisees, GNA and Shree at the Hotel.

(ECF No. 61-1 ¶¶ 3-20.) An additional affidavit by Amit Amin, one of two GNA members (who are also the sole Shree shareholders), includes many of these same factual contentions. (ECF No. 61-2.)

Plaintiffs have not directed this Court to any evidence that contravenes any of the foregoing affidavit contentions. Instead, Plaintiffs seek to evade summary judgment by arguing that Choice Hotels can be liable under an apparent agency theory.[1] Choice Hotels asserts that such a theory simply does not apply in a § 1981 case as a matter of law, but this Court disagrees with that proposition. *See Thomas v. Freeway Foods, Inc.*, 406 F. Supp. 2d 610, 618-19 (M.D.

---

[1] Although Plaintiffs assert in a footnote that actual agency could also apply here, they state that this Court does not need to reach that issue. (ECF No. 66, at 11 n.4.) The Court does not reach the issue of actual agency because Plaintiffs have failed to present substantive argument in support of their bald contention.

7

N. C. 2005) (applying state law of apparent agency in § 1981 case and denying summary judgment for franchisor); *Barton v. Thompson*, No. CIV.A. No. HAR 95-2154, 1995 WL 860632, at *3 (D. Md. Nov. 28, 1995) (applying apparent agency in § 1981 case involving Choice Hotels).  Although Choice Hotels attempts to parse the cases in which such application has occurred, Choice Hotels' reliance on unimportant distinctions attempts to sidestep the larger point that apparent agency can exist in the § 1981 context depending on the circumstances.

Tracking the elements of Ohio's apparent agency law, Plaintiffs assert that the circumstances support their reliance on apparent agency here.  They suggest that a reasonable jury could find on the evidence before the Court that Choice Hotels permitted GNA and Shree to hold themselves out to the public as acting on behalf of Choice Hotels, that Plaintiffs believed that Plaintiffs were interacting with Choice Hotels, and that Plaintiffs had good faith reasons to believe that GNA and Shree possessed the authority to act on behalf of Choice Hotels.  To support these contentions, Plaintiffs point to a number of facts.  They have submitted the franchise agreement and franchise rules, which indicate that Choice Hotels required GNA to use Comfort Suites signage and logos inside and outside the hotel, and they note that Choice Hotels' directory and website listings also identified the hotel only as a Comfort Suites hotel.  Arguably only the former contention presents much relevance insofar as Plaintiffs' perceptions and reliance are concerned; the evidence indicates only that Plaintiffs saw the signage and logos inside and outside the hotel.  Plaintiffs also contend via affidavit that they went to the hotel because of the Comfort Suites sign visible from the road, that they did not know the hotel was independently owned, that Van Doorn was wearing a Comfort Suites uniform, and that the receipt they received bore the Comfort Suites logo.  Persuasive authority supports the denial of

summary judgment based on such facts given that a jury could rely on them in finding apparent agency.  *See Cooley v. Valero Energy Corp.*, No. 2:11-cv-526, 2012 U.S. Dist. LEXIS 40291, at *15-17 (S.D. Ohio Mar. 20, 2012) (required use of franchisor marks and other factors presented factual dispute over apparent agency and precluded summary judgment); *Coleman v. Chen*, 712 F. Supp. 117, 124 (S.D. Ohio 1988) (questions over franchisor's degree of control under licensing agreement coupled with plaintiff's lack of knowledge as to ownership of hotel presented factual dispute over apparent agency and precluded summary judgment); *Broock v. Nutri/Sys., Inc.*, 654 F. Supp. 7, 10-11 (S.D. Ohio 1986) (arguably misleading advertising, signage, and directory listing coupled with possible reasonable reliance by plaintiff on these factors presented factual dispute over apparent agency and precluded franchisor obtaining summary judgment).

    Choice Hotels disputes several of Plaintiffs' affidavit representations, such as their purported reliance on the Comfort Suites brand as informing their selection of the hotel.  The record does contain testimony suggesting that Plaintiffs' reliance on the Comfort Suites name or reputation may not be what they represent in their affidavits.  Perhaps Plaintiffs are saying what they need to say to avoid an adverse summary judgment ruling, perhaps they did rely upon the brand and reputation as they say they did, or perhaps they took whatever room was available within a universe of "acceptable hotels" that included Comfort Suites based in part on the reputation of the brand.  The evidence suggests multiple reasonable inferences, and Plaintiffs need not persuade here, but only must point to a genuine issue of material fact.  It is for a jury and not for this Court to weigh the evidence and to favor one inference or version over another.

    This Court agrees with Plaintiffs that there is a genuine issue of material fact over the

degree of control exercised by Choice Hotels over GNA. Although the inferences that arguably suggest some limited degree of control certainly may not be the strongest, the weight to be afforded these inferences is for a jury and not this Court to decide. The Court also agrees with Plaintiffs that genuine issues exist over facts that could enable a reasonable jury to conclude that apparent agency applies to the Choice Hotels-GNA/Shree relationship, given that a reasonable jury could conclude that GNA and Shree functioned as the apparent agents of Choice Hotels and that Plaintiffs reasonably believed that the hotel was owned and operated by Choice Hotels. *Cf. Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 167 (4th Cir. 1988) (negligence case in which hotel franchisor was held liable via apparent agency theory). In reaching these conclusions, the Court is cognizant of Choice Hotels' argument that it did not hold GNA or Shree out as its agents, but "[r]ather, GNA and Shree have held out themselves as Choice's agent." (ECF No. 74, at 12 n.5.) What Choice Hotels does not credit is that reasonable inferences suggest that Choice Hotels enabled if not actively endorsed such holding out; that is the point of apparent agency or agency by estoppel.

      Having resolved the threshold issue of whether Choice Hotels can potentially be liable via Plaintiffs' apparent agency theory, depending upon the facts found, the Court turns to Choice Hotels' argument that Plaintiffs nevertheless cannot establish a *prima facie* case of discrimination. There is no dispute that, as African-Americans, Plaintiffs are members of a protected class. Assuming *arguendo* the validity of Plaintiffs' apparent agency argument, Plaintiffs also sought to make or enforce a contract for services ordinarily provided by Choice Hotels. Choice Hotels asserts that Plaintiffs' *prima facie* case fails because they cannot establish that Choice Hotels denied them the right to enjoy the benefits or privileges of the contractual

relationship by depriving them of services while similarly situated persons outside the protected class were not so deprived.

Plaintiffs assert that Van Doorn permitted a larger group of Caucasian guests to gather in another room despite the hotel's purported "no party" policy, while Plaintiffs were asked to leave the hotel. Choice Hotels argues that Plaintiffs cannot show that they were deprived of equal treatment because their "other group" contention is based on inadmissible hearsay. Rather than being based on their own perceptions, Choice Hotels explains, Plaintiffs' representations regarding another group are based only on what they were told by others. This argument somehow neglects Van Doorn's own deposition testimony in which he recounts how the other group was comprised of approximately thirty female volleyball players, many of whom were sitting the hotel hallway, as well as several parent chaperones, some of whom were drinking alcohol. Van Doorn declined to characterize that gathering as a party, but explained that he gave the group a warning that if its loud noise continued, he would ask them to leave the hotel. (ECF No. 77-1, at 2-7.) A reasonable jury could find no race-based disparity or could find unequal treatment that satisfies the disputed prong of Plaintiffs' *prima facie* case.

In addition to Van Doorn's testimony, Plaintiffs direct this Court to the affidavit of Naquita Carter, which provides:

> When I was in the hallway outside of Shawn's room, I saw the people in the room next door. They had their hotel room door open and I saw people going in and out of that room. I did not see each person who was in the room next door, but I recall seeing at least eight different people in that group. They were all white.[2]

---

[2] Other references in the record to Ross-Mitchell spell his first name as "Shaun," not "Shawn."

11

(ECF No. 77-1, at 16, Carter Aff. ¶ 2.) Carter also swore that "[t]here were more people in the room next door to Shawn's room than there was in ours." (Id. ¶ 3.) Choice Hotels argues that it is entitled to summary judgment because Carter failed to state how many Caucasians she observed in the room next door at any one time, how many people were in her room, and how many people were in the room next to her room. Such parsing of the affidavit fails to account for one reasonable inference that Carter's words suggest, namely that she observed at least eight different Caucasians who were part of the group next door. That is enough to suggest a similar group of members outside the protected class which was treated differently. In light of this evidence, the Court need not and does not address Choice Hotels' arguments regarding the admissibility of other evidence.

Summary judgment is not warranted on Plaintiffs' discrimination claims. This leaves for discussion Plaintiffs' breach of contract claim.

In relatively underdeveloped briefing, Choice Hotels argues that it is entitled to judgment as a matter of law because it was not a party to any contract with Plaintiffs. Plaintiffs in turn assert that Choice Hotels can be liable on their contract claim under the same apparent agency principles discussed above, with a reasonable jury concluding that Plaintiffs believed that they were contracting with Choice Hotels. In light of this rationale and the genuine issues of material fact that surround the apparent agency theory, the Court must conclude that the breach of contract claim also survives summary judgment. *See Orchard Group, Inc. v. Konica Med. Corp.*, 918 F. Supp. 186, 191-92 (N.D. Ohio 1996) (declining to grant summary judgment on Ohio breach of contract claim in light of fact issues surrounding apparent agency).

Two additional points are unfortunately warranted.

First, Choice Hotels asserts in its reply memorandum that, under Ohio law, the only damages available to Plaintiffs are economic damages resulting from any breach. It is unclear whether Choice Hotels invokes the economic-loss rule in an effort to obtain summary judgment on other damages that it perceives Plaintiffs seek or whether Choice Hotels is simply seeking to be informative should the contract claim proceed toward trial.

If the former possibility is the explanation, Choice Hotels has erred by raising an argument for summary judgment for the first time in a reply memorandum. Choice Hotels is confined to those grounds raised in its motion and initial memorandum in support in its attempt to obtain summary judgment. This Court has explained time and again that "a reply brief is not the proper place to raise an issue for the first time." *United Tel. Co. of Ohio v. Ameritech Servs.*, Inc., No. 2:10–cv249, 2011 WL 53462, at *3 n. 2 (S.D. Ohio Jan.7, 2011). Consequently, the Court need not and will not consider Columbus' new or newly recast arguments. *See Versatile Helicopters v. City of Columbus*, No. 2:10-cv-1110, 2012 WL 2930984, at *4 (S.D. Ohio July 18, 2012) (abstaining from consideration of argument raised for the first time in a summary judgment reply memorandum); *Culy Constr. & Excavating, Inc. v. Laney Directional Drilling Co.*, No. 2:12-cv-4, 2012 WL 2071804, at *4 (S.D. Ohio June 8, 2012) (refraining from considering argument first raised in a reply memorandum); *Cooey v. Strickland*, No. 2:04–cv–1156, 2010 WL 3212079, at *12 (S.D. Ohio Aug.12, 2010) (foregoing consideration of argument improperly raised for first time in reply memorandum); *Tolstih v. L.G. Elecs., U.S.A., Inc.*, No. 2:07–cv–582, 2009 WL 3241665, 6 (S.D. Ohio Oct.2, 2009) (refusing to consider an argument improperly raised for the first time in a reply memorandum); *Piergallini v. Alfa Leisure, Inc.*, No. 2:06–cv–0555, 2008 WL 687167, at *5 (S.D. Ohio Mar.11, 2008) (declining to

address an argument improperly raised for the first time in a reply memorandum); *Ferron v. Search Cactus, L.L.C.*, No. 2:06–cv–327, 2007 WL 1792332, at *4 (S.D. Ohio June 19, 2007) (rejecting an argument improperly raised for the first time in a reply memorandum). If the latter possibility is the explanation, the reply memorandum is neither the time nor the place for making such advisory communications to the Court.

Second, both Choice Hotels and Plaintiffs devote portions of their briefing to arguing over whether this Court should entertain a declaratory judgment action under 28 U.S.C. § 2201. But Plaintiffs do not invoke § 2201 in their pleading, and none of their three counts in the First Amended Complaint are for declaratory judgment. Plaintiffs do ask in their prayer for relief that the Court "[e]nter a declaratory judgment finding that the foregoing actions of the Defendant [sic] violate the Civil Rights Act of 1866, 42 U.S.C. § 1981 and O.R.C. § 4112.02(G)." (ECF No. 60, at 7.) The Court took this phrasing to be simply an odd way for asking for judgment on the merits of the substantive claims. Given that this is the only sensible reading of the pleading and despite the parties' unusual summary judgment debate, this Court declines even to consider granting summary judgment on a count that does not exist.

## III.  Conclusion

The Court **DENIES** Choice Hotels' motion for summary judgment.  (ECF No. 61.)

**IT IS SO ORDERED**.

                                                /s/ Gregory L. Frost
                                         GREGORY L. FROST
                                         UNITED STATES DISTRICT JUDGE